UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:03CV-6-R

COLLEEN HATHAWAY                                                                                    PLAINTIFF

v.

CONTINENTAL ASSURANCE COMPANY and
PROGENY MARKETING INNOVATIONS, INC.                                          DEFENDANTS

### MEMORANDUM OPINION

Plaintiff Colleen Hathaway has moved for summary judgment (Dkt. # 70), Defendant Progeny Marketing Innovations, Inc. ("Progeny") responded (Dkt. # 76), as did Continental Assurance Company ("CNA") (Dkt. # 78), and Plaintiff replied (Dkt. # 83). Defendant Progeny also filed a Motion for Summary Judgment (Dkt. # 74) to which Plaintiff responded (Dkt. # 81) and Progeny replied (Dkt. # 85). Defendant CNA also filed a Motion for Summary Judgment (Dkt. # 79) to which Plaintiff responded (Dkt. # 82) and CNA replied (Dkt. # 84). These motions are now ripe for decision.

### BACKGROUND

This case arises out of a dispute regarding the actions of defendants CNA and Progeny in handling an insurance policy covering Plaintiff Hathaway's late husband, who died accidentally on November 14, 2001. Dr. Hathaway, as a customer of South Central Bank in Bowling Green, Kentucky, had been given the opportunity to apply for term life insurance offered by CNA; his application was processed by CNA's third-party administrator, Progeny's successor in interest. As the administrator of the plan, Progeny also "marketed the term life product, enforced the underwriting guidelines, made determinations as to whether applicants were qualified, serviced

1

the policy, made sure premiums were debited to bank accounts, documented claims, and sent claim information to CNA for a decision regarding any claim filed." (Dkt. # 79, Attachment # 1, at 3.) On August 23, 2001, Dr. Hathaway applied for a term life insurance policy in the amount of $100,000, by mailing to Progeny an application card. Even upon receipt of the application, however, Progeny did not begin deducting premiums. When Dr. Hathaway inquired in September, 2001 about the status of his application, Progeny responded by letter requesting that he complete another application and provide his bank account information, including a cancelled check and account number. Dr. Hathaway filled out the second application and included his bank account number, but apparently did not include a cancelled check; he mailed it on or near September 25th, and it was marked received by Progeny on October 10th. Shortly thereafter, Progeny returned Dr. Hathaway's application to him (after entering the application into its computer system) with an attachment that read, in relevant part, as follows:

> Thank you for participating in the Term Life insurance plan. We have processed your application and your information is on file. Please attach this application to your certificate of insurance and keep it with your records. Coverage was issued based upon the answers on your application, and if they are proved to be incorrect, coverage could be rescinded and claims denied.

(Plaintiff's Motion for Summary Judgment, Dkt. # 70, at 5). Progeny did not send the "certificate of insurance" to which the card made reference, so Dr. Hathaway called again on November 2, 2001 (12 days before his death). At this time, Progeny's computers apparently reflected that the coverage was "approved." After Dr. Hathaway's death, officials from the South Central Bank notified Progeny of it, but apparently the notation was only made on two of the three policies Dr. Hathaway had purchased from CNA; no notation was made on the term life policy entry. On January 8, 2002, Progeny sent a letter addressed to Dr. Hathaway which read,

in part:

> Last year, you applied and qualified for a group Term Life Insurance program through SOUTH CENTRAL BANK underwritten by Continental Assurance Company. I am sorry to report that, to date, we have not issued a certificate of insurance and your coverage has not become effective. This unfortunate delay is the result of new privacy laws. Although you requested the monthly premium to be billed to your SOUTH CENTRAL BANK account, we were unable to obtain your account information and bill you for this coverage.

(Plaintiff's Motion for Summary Judgment, Attachment # 8 to Dkt. # 70). The letter further advised that Dr. Hathaway could pay the premiums that had not yet been paid, to receive coverage beginning from his original effective date, or could reapply for coverage and receive a new effective date upon Progeny's acceptance of his new application. It then said: "Once your response has been received and approved, you will receive a certificate of insurance confirming your coverage." (*Id.*)

After receiving this letter, Mrs. Hathaway sent a check on January 17, 2002 to cover premiums back to the original effective date; then, on February 18, 2002, she sent a letter and another check. On March 15, 2002, Progeny sent a letter notifying Mrs. Hathaway that the "reinstatement offer" applied only to Dr. Hathaway and that she could not accept it on his behalf; it enclosed Mrs. Hathaway's uncashed checks. At the same time, Progeny prepared a claims packet which it sent to CNA for a claims review; the packet did not include Dr. Hathaway's application(s) for term life insurance, merely a notation that the policy had been cancelled as of its effective date. CNA's adjuster questioned Progeny about the cancellation, and was told that the cancellation was due to failure to pay premiums. On the basis of this review, CNA denied Mrs. Hathaway's claim for benefits under the term life policy (it paid claims under the other two policies). Once the current litigation was initiated, CNA undertook an "internal investigation" of

Dr. Hathaway's claim. Progeny apparently gave CNA no explanation as to why Dr. Hathaway's application was not processed fully or why it was not included in the claims packet sent to CNA. Nevertheless, CNA ultimately decided to pay Mrs. Hathaway $100,000.00, plus 8% interest.

Plaintiff's complaint (as amended by Dkt. Nos. 36 and 55) alleges a number of claims related to Progeny's and CNA's conduct in handling Dr. Hathaway's policies. The initial complaint, filed in Warren Circuit Court, named only CNA and alleged that CNA unreasonably denied the claim, which denial constituted a breach of contract, a violation of the Unfair Claims Settlement Practices Act, and the tort of bad faith. The complaint sought punitive and consequential damages, as well as payment of benefits under the policy, interest, and attorney fees and costs. After removal to this Court, the Plaintiff twice amended her complaint. The first amendment set forth specific acts alleged to constitute bad faith and to be violations of various other laws, including Kentucky's consumer protection act and insurance practices acts, as well as to clarify the interest rate demanded. The second added Progeny as a co-defendant on all claims except those relating to CNA's denial of Mrs. Hathaway's claims under the policy. Plaintiff moved for summary judgment on the issues of bad faith liability, interest and attorney fees. Defendants CNA and Progeny, separately, moved for summary judgment in their favor on all claims.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether

summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence.  To support his position, he must present evidence on which the trier of fact could find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.,* 90 F. 3d 1173, 1177 (6th Cir. 1996).  Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, Ky., 807 S.W.2d 476 (1991)." *Gafford v. General Electric Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## ANALYSIS

As an initial matter, the Court will address Progeny's arguments that (1) Plaintiff's second amendment to her Complaint, which added Progeny as a party, was untimely as to the claims arising under the Kentucky Consumer Protection Act (KCPA) and (2) that no bad faith

...
...
...

claim may be maintained against it because there is no duty to exercise good faith in the processing of insurance applications. As to the statute of limitations issue, Plaintiff's claims against Progeny were clearly not filed within the two-year limitations period set forth for such claims in KRS § 367.220(5). Plaintiff argues that the doctrine of fraudulent concealment tolls the statute of limitations in this case, and asserts that "the defendants have in essence circled their wagons to contain the truth." (Plaintiff's Response to Progeny's Motion for Summary Judgment, Dkt. # 81, at 1). Progeny correctly argues that the fraudulent concealment doctrine does not apply to causes of action arising under the KCPA. As the Kentucky Court of Appeals said when considering an application of the discovery rule to KCPA, "[w]hile the [KCPA] may have a broad application to afford broad protection, it is also specific as to when the action must be brought." *Cook v. State Farm Mut. Auto Ins. Co.*, 2004 WL 2011375 (Ky. Ct. App. 2004). The KCPA is a purely statutory creation, and there is no reason to believe that the Kentucky legislature intended the fraudulent concealment doctrine to apply to it. Therefore, as to Progeny, Plaintiff's KCPA claims must be dismissed as time-barred.

The Court will next address the bad faith claim, which is central to Plaintiff's case (and upon which each party seeks summary judgment). Under Kentucky law,

> "[a]n insured must prove three elements in order to prevail against an insurance company for alleged refusal in bad faith to pay the insured's claim: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim, and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed."

*Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (quoting *Federal Kemper Ins. Co. v. Hornback*, 711 S.W.2d 844 (Ky. 1986), Leibson, J., dissenting, as adopted by *Curry v. Fireman's Fund Ins. Co.*, 784 S.W.2d 176 (Ky. 1989)). These elements are required whether the

claim arises under Kentucky's Unfair Claims Settlement Practices Act or sounds in tort. *Id.*

Progeny and CNA argue that Plaintiff's claims do not satisfy the test from *Wittmer*. Plaintiff, on the other hand, argues that the Court should grant summary judgment on the issue of liability for bad faith, leaving for trial the issue of damages. However, the Court finds that there are issues of fact central to the bad faith inquiry which are material and which make Plaintiff's claim inappropriate for resolution on summary judgment. The evidence indicates that CNA, despite Progeny's failures in processing Dr. Hathaway's application, did have an obligation to pay the claim under the terms of the policy (which it ultimately did). The issues of whether CNA had a reasonable basis for its initial denial of the claim and whether it acted with reckless disregard for the question of whether such a basis existed, however, present issues of fact appropriate for resolution by a jury at trial. Neither party has presented sufficient evidence to convince the Court that, as a matter of law, CNA's actions in evaluating and (initially) denying Plaintiff's claim under the term life insurance policy did or did not constitute bad faith.

Progeny, however, also argues that, even if Plaintiff has a colorable claim against CNA for bad faith, such a claim cannot be maintained against it because it did not make the decision to deny the claim. However, this defense rings hollow because, although Progeny wielded no discretionary authority in the handling of Plaintiff's claim, the evidence is clear that it prepared the claims packet for CNA's review, and its failure to include Dr. Hathaway's applications seriously misrepresented the status of the claim under the term life policy. Further, the Court notes that it was *Progeny* that arguably represented to Dr. Hathaway, both in writing and on the telephone, that his coverage was in effect; this is a significant part of the bad faith claim. According to the Kentucky Court of appeals, "under certain circumstances, an insurance

company will be held liable on its contract when it had unreasonably delayed or arbitrarily rejected an application for insurance." *Life & Cas. Ins. Co. of Tennessee v. Central Steel Products, Inc.*, 709 S.W.2d 830, 832 (Ky. Ct. App. 1986). One of the cases cited by the Court of Appeals for this proposition, *Northwestern Mutual Life Insurance Co. v. Neafus*, held that "...if an application is satisfactory, and the company, if it had acted in a reasonable time, would have accepted the risk, it should not be allowed, after holding the application for an unreasonable time, to reject it, solely because of the death of the applicant." 140 S.W. 1026, 1031 (Ky. 1911). The *Central Steel Products* court said that "[t]hese cases do not create a duty to accept or reject an application in a reasonable time, the breach of which creates negligence *per se* for the insurance company." 709 S.W.2d at 832. Nevertheless, where, as here, it appears that but for Progeny's failure to appropriately process the application, it would have been accepted (and premiums would have been paid), the Court cannot say as a matter of law that Progeny is not subject to bad faith liability for its actions. The Court also notes that, insofar as CNA's failure adequately to investigate the claim may give rise to bad faith liability, Progeny's role in that investigation may also subject it to liability therefor.

As to Plaintiff's KCPA claims against CNA, it appears that they are both time-barred as having not been brought within the appropriate statute of limitations period (the acts themselves occurred no later than March of 2001; the Amended Complaint asserting the KCPA claims was filed in June of 2001) and subject to summary judgment for failure to present sufficient evidence to create a genuine issue of material fact as to CNA's actions having been unfair, false, misleading or deceptive. Similarly, the claims for evidence tampering under KRS §542.100 and inadvertent billing of Mrs. Hathaway's account do not give rise to colorable claims and should

8

be dismissed.  The claim for breach of contract is subject to summary judgment because CNA has paid Mrs. Hathaway the amount due under the contract, if one existed.  If Plaintiff ultimately recovers under her bad faith claim, the adjusted interest rate and attorney fees may be recoverable.

## CONCLUSION

For the reasons stated above, Defendants' Motions for Summary Judgment will be **GRANTED in part and DENIED in part**, and Plaintiff's Motion for Summary Judgment will be **DENIED**.  An appropriate order shall issue.